UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JUDITH A. ROGERS,                          :

                        Plaintiff,         :      04 Civ. 7043 (HBP)

       -against-                           :      OPINION
                                                  AND ORDER
DOUGLAS W. MCLAMB,                         :

                        Defendant.         :

----------------------------------X

            PITMAN, United States Magistrate Judge:


I.    Introduction


            This is a personal injury action arising out of an

automobile accident; jurisdiction is predicated on diversity of

citizenship.  Defendant moves for an Order pursuant to

Fed.R.Civ.P. 56, granting summary judgment dismissing plaintiff's

claim for non-economic loss on the ground that there is insuffi-

cient evidence to give rise to a genuine issue of fact that

plaintiff has suffered a "serious injury" as that term is defined

by New York Insurance Law § 5102(d).  The parties have consented

to my exercising plenary jurisdiction pursuant to 28 U.S.C. §

636(c).

            For the reasons set forth below, defendant's motion is

granted.

II.   Facts

        This action arises out of a collision that took place
on December 13, 2002.  At that time, an automobile owned and
operated by plaintiff Judith Rogers collided with a tractor-
trailer owned and operated by defendant Douglas McLamb on the
Westbound Brooklyn Queens Expressway near its intersection with
Sands Street in Brooklyn (Complaint, ¶¶ 5-12).  Plaintiff did not
request any medical assistance immediately after the collision,
nor did she go to a hospital at that time (Judith Rogers' Deposi-
tion ("Rogers' Dep.") at 111, annexed as Ex. F to Answering
Affirmation of Scott Stern, dated January 10, 2006 ("Stern Aff.")
(Docket Item 23)).  The police arrived at the scene and completed
an accident report.  Plaintiff then drove her car to her home in
New Jersey (Rogers' Dep. at 118).

        Plaintiff sought medical treatment from Dr. Praful Shah
approximately two weeks after the accident (Rogers' Dep. at
124).[1]  Plaintiff complained to Dr. Shah of sharp pains in her
neck and back, was prescribed pain medication and was referred
for an MRI of the cervical and lumbar spine (Stern Aff., Ex. A).
The MRI of the cervical spine was conducted on January 7, 2003

_____

        [1]Plaintiff testified in her deposition that she saw her
primary care physician, Dr. Narendra Patel, four days after the
accident.  However, the earliest medical records for treatment of
plaintiff at Dr. Patel's office are dated December 26, 2002
(Stern Aff., Ex. A).

and revealed that plaintiff had a disc protrusion at C5-C6 with impingement of the right C5 nerve root, although there was no showing of cord compression or migration of disc material (Stern Aff., Ex. A).  Plaintiff has also submitted the affirmation of the radiologist who took the MRI, who characterized it as showing "a disc protrusion (herniation) at C5-C6" (Affirmation of Dr. Sam Mayerfield, sworn to December 13, 2005 ("Mayerfield Aff."), annexed as Ex. B to Stern Aff., ¶ 4).  The MRI of the lumbar spine disclosed a disc bulge at the L4-L5 level, but there was no evidence of disc herniation (Stern Aff., Ex. A).

On January 27, 2003, plaintiff was seen by Dr. Melyssa Paulson, an orthopedist, who noted that she believed plaintiff was suffering from "musculoligamentous sprains of the cervical and lumbar spine status post motor vehicle accident, with mild cervical degenerative joint disease" (Stern Aff., Ex. C).  Dr. Paulson prescribed Celebrex and referred the plaintiff for physical therapy (Stern Aff., Ex. C).

Dr. Paulson examined plaintiff again on May 8, 2003, at which time plaintiff told Dr. Paulson that the preceding two weeks had been "very bad" and that she continued to get stiffness and pain in her lower back after sitting for short periods of time (Stern Aff., Ex. D).  Dr. Paulson recommended that plaintiff receive sacroiliac joint steroid injections, which plaintiff

received on June 23, 2003, June 30, 2003, and July 21, 2003
(Stern Aff., Ex. E).

Plaintiff testified that she was on disability from
December 13, 2002 until she was cleared to return to work on
August 18, 2003 (Rogers' Dep. at 19-20).  The plaintiff's em-
ployer during this time, Prudential Insurance, paid plaintiff her
full salary for three months of her absence and two-thirds of her
salary for the balance (Rogers' Dep. at 19-20).

III. <u>Analysis</u>

    A.  <u>Summary Judgment Standard</u>

The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

To prevail on a motion for summary judgment, the moving
party must show that there are no genuine issues of material fact
and that the moving party is entitled to judgment as a matter of
law.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986);
Fed.R.Civ.P. 56(c).  In deciding such a motion, the district
court must view the evidence in the light most favorable to the
non-moving party and draw all reasonable inferences in the non-
movant's favor.  <u>Hemphill v. Schott</u>, 141 F.3d 412, 415 (2d Cir.
1998); <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1052 (2d Cir. 1995).
<u>See also</u> <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir.
2000); <u>Belfi v. Prendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999);

<u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998); <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 559 (2d Cir. 1997).

Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party, in order to defeat the motion, "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

B.   <u>The Parties' Arguments</u>

Because the Court's jurisdiction in this matter is based on diversity of citizenship, New York substantive law governs this action.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).  New York's "no fault" insurance law limits recovery for non-economic injuries sustained in motor vehicle accidents such as the one at issue here.  Specifically, New York Insurance Law § 5104(a) provides:

> Notwithstanding any other law, in any action by or on behalf of a covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.

"Basic" economic loss is defined as economic loss of up to fifty thousand dollars per person of medical expenses, lost wages or other "reasonable and necessary expenses" of up to twenty-five dollars per day for not more than one year after the accident.  New York Ins. Law § 5102(a).  Plaintiff has not submitted any evidence that her economic loss exceeds this threshold.  Thus, the damages sought by plaintiff are limited to "non-economic" loss which are defined by New York Insurance Law § 5102(c) as "pain and suffering and similar non-monetary detriment."  Accordingly, Section 5104(a) requires that a plaintiff show that she has suffered "serious injury" before she can recover such non-economic losses.  A "serious injury" is defined as:

> [A] personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

New York Ins. Law § 5102(d).  Thus, in order for the plaintiff here to recover, she must show she sustained a serious injury under one of the nine alternative definitions.  Plaintiff's

complaint does not specify which definition or definitions is applicable to her claimed injury.

Whether there is sufficient evidence to create a material question of fact as to the existence of serious injury may be decided by a court on summary judgment. Licari v. Elliott, 57 N.Y.2d 230, 238, 441 N.E.2d 1088, 1091, 455 N.Y.S.2d 570, 573-74 (1982). See also Rosas v. Hertz Corp., 96 Civ. 7165 (MBM), 1997 WL 736723 at *1 (S.D.N.Y. Nov. 24, 1997).

The Honorable Denise L. Cote, United States District Judge, explained the relationship between Rule 56 and the issue of serious injury as defined in New York's Insurance Law in Morrone v. McJunkin, 98 Civ. 2163 (DLC), 1998 WL 872419 at *2 (S.D.N.Y. Dec. 15, 1998):

> On summary judgment, a defendant must establish a prima facie case that plaintiff's injuries were not serious and then the burden shifts to plaintiff. See Gaddy v. Eyler, 79 N.Y.2d 955, 956, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991 (1992). For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

(citations omitted). See also Khouzam v. Zalesky, 93 Civ. 6360 (LMM), 1996 WL 79882 at *4 (S.D.N.Y. Feb. 26, 1996) ("As is true in any summary judgment motion, the defendant must present admissible evidentiary material indicating that the plaintiff cannot establish serious injury."); Pichardo v. Chesley, 92 Civ. 5422 (KMW), 1994 WL 369281 at *1 (S.D.N.Y. July 12, 1994) ("On a

motion for summary judgment for failure to meet the 'serious
injury' threshold, defendants bear the burden of presenting
evidence, in admissible form, to warrant a finding as a matter of
law that plaintiffs have not suffered a serious injury.").[2]

---

[2]In Celotex Corp. v. Catrett, supra, 477 U.S. 317 at 322-23,
the Supreme Court held that summary judgment may be granted where
the movant simply demonstrates an absence of sufficient evidence
in the record to give rise to a genuine issue of fact regarding
(continued...)

(...continued)
an element essential to plaintiff's claim with respect to which
the non-movant bears the burden of proof.  Thus, under a strict
Celotex approach, it would appear that summary judgment could be
granted on the issue of serious injury, even if the defendant
offers no medical evidence of its own, if the plaintiff's evi-
dence is insufficient to establish a triable issue of fact as to
whether he or she has sustained a serious injury.  Despite
Celotex, the weight of authority in this Circuit appears to
follow Gaddy without discussion, which requires a defendant in a
No-Fault Insurance Law case to "establish[] a prima facie case
that plaintiff's injuries were not serious" before the burden
shifts to plaintiff to come forward with evidence to overcome
defendant's motion.  Gaddy v. Eyler, supra, 79 N.Y.2d at 957, 591
N.E.2d at 1177, 582 N.Y.S.2d at 991.  See Fuhrman-Peretz v.
Ferragamo, 04 Civ. 9601 (LAP), 2006 WL 2587981 at *3 (S.D.N.Y.
Sept. 7, 2006) ("On a summary judgment motion based upon New
York's no-fault law, the defendant must first make a prima facie
showing that the plaintiff did not suffer a serious injury.");
Altman v. Bayliss, 95 Civ. 0734 (JTE), 1999 WL 782338 at *5
(W.D.N.Y. Sept. 30, 1999) ("[A] court must decide whether the
defendant has established a prima facie case that plaintiff's
injuries [are] not serious within the meaning of Section
5102(d)."); Morrone v. McJunkin, supra, 1998 WL 872419 at *2;
Yanez v. City of New York, 29 F. Supp.2d 100, 113 (E.D.N.Y. 1998)
("[T]o be entitled to summary judgment, it is defendant's burden
to put forward sufficient evidence that the plaintiff did not
suffer 'serious injury.'"); Jackson v. Greyhound Lines, 96 Civ.
7431 (JGK), 1998 WL 355423 at *3 (S.D.N.Y. July 2, 1998) ("Under
the requirements of the Insurance Law, once the defendants have
presented a prima facie case that plaintiff has not suffered a
'serious injury' as defined by § 5102(d), [the burden shifts to
plaintiff]."); George v. Thomas, 888 F. Supp. 41, 43 (S.D.N.Y.
1995) ("If the defendant sustains its burden of submitting
evidentiary material indicating that the plaintiff cannot estab-

Defendant makes several arguments in support of his contention that there is no genuine issue of material fact as to whether plaintiff suffered a serious injury within the meaning of Section 5102(d).

First, defendant claims that plaintiff has failed to adduce objective evidence to establish that she sustained "a permanent consequential limitation of use of a body organ or member" or "significant limitation of use of a body function or system" as defined by Section 5102(d) (Affirmation of James Merlino, dated October 31, 2005 ("Merlino Aff.") (Docket Item 14), at 2-3).  Additionally, defendant argues that plaintiff has failed to adduce any admissible evidence that any of plaintiff's alleged injuries were caused by the accident (Merlino Reply Affirmation, dated January 27, 2006 ("Merlino Reply Aff.)(Docket Item 24), ¶¶ 15-16).

In response, plaintiff asserts that she has sustained "serious and permanent injuries" as a result of the accident, which caused her to go on disability for eight months, a length

---

lish 'serious injury' within the meaning of the statute, the case will be dismissed unless the plaintiff comes forward with evidentiary material sufficient to raise a genuine issue for trial."); Janssen v. Weissman, 91 Civ. 0313 (RWS), 1994 WL 119017 at *2 (S.D.N.Y. Apr. 4, 1994) ("[T]he defendants on a summary judgment motion must first present evidence establishing that plaintiff has not sustained a 'serious injury' as a matter of law.").

of time considerably longer than the 90 out of 180 day require-
ment provided in Section 5102(d) (Stern Aff., ¶ 15).

Defendant has offered plaintiff's deposition testimony,
plaintiff's MRI results and the affirmation of Dr. Roger Bonomo,
a neurologist who examined plaintiff on defendant's behalf on
September 30, 2005 (Affirmation of Dr. Roger Bonomo, dated
September 30, 2005 ("Bonomo Aff.") at 3, annexed as Ex. G to
Merlino Aff.).[3]   During Dr. Bonomo's examination of plaintiff,
she complained of mild tenderness in the muscles of her neck,
back, shoulders and hips, as well as neck pain at the extremes of
movement (Bonomo Aff. at 2).   Based on his examination and
plaintiff's medical history, Dr. Bonomo concluded that plaintiff
had, at most, resolved muscle strains, and that "the reported
radiographic findings of central disco protrusion, DJD and disc
bulge are not the cause of any symptoms or the effect of any
specific trauma" (Bonomo Aff. at 3).

In response, plaintiff argues that Dr. Bonomo's affir-
mation should be disregarded because Dr. Bonomo did not review

---

[3]Although Dr. Bonomo's affirmation is not in the form of an
affidavit sworn to before a notary public, 28 U.S.C. § 1746
provides that an unsworn declaration made under the penalty of
perjury has the same evidentiary weight as an affidavit.   Dr.
Bonomo states in his affirmation, "I certify and affirm that the
foregoing is true to the best of my knowledge under penalty of
perjury."   This language is sufficiently similar to the language
prescribed in Section 1746, and thus renders Dr. Bonomo's
affirmation admissible to the same extent as an affidavit (see
Bonomo Aff. at 3).

the actual MRI scans, and his affirmation consists primarily of a recitation of plaintiff's history and is, therefore, based on hearsay (Stern Aff., ¶ 18).

Plaintiff's argument is unpersuasive because, as an expert witness, Dr. Bonomo may rely on hearsay if it is information reasonably relied upon by experts in the relevant field. Fed.R.Evid. 703; Nasrallah v. Helio De, 96 Civ. 8727 (SAS), 1998 WL 152568 at *7 (S.D.N.Y. April 2, 1998) (treating physicians commonly rely on "interpretive reports of radiologists in making diagnoses without viewing the underlying scans themselves or requiring the radiologists to file affidavits.").

Furthermore, Dr. Bonomo did conduct a neurological examination of the plaintiff in which he tested her range of motion and muscular strength (Bonomo Aff. at 2).  There is nothing about the examination and review of the plaintiff's medical history and records that indicates Dr. Bonomo lacked sufficient basis for his conclusions.

Plaintiff also argues that Dr. Bonomo's examination did not occur until almost three years after the accident occurred, and, thus, he is unable to correctly assess plaintiff's condition during the eight months in which she was on disability (Stern Aff., ¶ 19).  When a plaintiff claims a serious injury under Section 5102(d) based on a permanent injury, which plaintiff here

alleges,[4] a defendant may properly rely on an examination of the plaintiff conducted several years after the accident because the passage of time will not effect a permanent injury.  See Farozes v. Kamran, 22 A.D.3d 458, 458, 802 N.Y.S.2d 706, 707 (2d Dep't 2005) (defendants' motion for summary judgment granted on the basis of an examination of plaintiff conducted four years after the accident); Khouzam v. Zalesky, supra, 1996 WL 79882 at *1-*2 (summary judgment granted on the basis of an examination of plaintiff conducted two years after incident).  Contrary to plaintiff's argument, a plaintiff's submission of a doctor's affidavit based upon a stale medical examination is often insufficient to withstand a more recently conducted examination offered by the defense.  See Shao v. Paszynsky, 97 Civ. 3815 (ILG), 2000 WL 307372 at *5 (E.D.N.Y. Jan. 31, 2000)(citations omitted); Medina-Santiago v. Nojovits, 5 A.D.3d 253, 253, 773 N.Y.S.2d 294, 294 (1st Dep't 2004).

As for plaintiff's claim of a serious injury under the last of the alternative definitions set forth in Section 5102(d) -- the so-called "90/180 category" -- there is authority stating that because the 90/180 category is, by its own language, non-permanent and temporally limited, an examination conducted years after the alleged accident will not reveal whether the plaintiff

---

[4]The complaint alleges that plaintiff sustained "serious and severe permanent personal injuries" (Complaint, ¶ 15).

was able to carry out her normal and customary activities during the prescribed statutory period.  See Troutovski v. Sitnir, 180 Misc.2d 124, 126-27, 687 N.Y.S.2d 534, 535 (N.Y.C. Civ. Ct. 1999).  See also Frier v. Teague, 288 A.D.2d 177, 178, 732 N.Y.S.2d 428, 429 (2d Dep't 2001) (examinations of plaintiff by the defendant's physicians were performed over three years after the accident, and thus were insufficient to show that plaintiff did not meet the 90/180 category under Section 5102(d)); Toussaint v. Claudio, 23 A.D.3d 268, 268, 803 N.Y.S.2d 564, 565 (1st Dep't 2005) (reports of the defense physicians, based on examinations of plaintiff conducted six years after the accident, addressed plaintiff's conditions as of the time of the examina- tion, and were insufficient to shift burden of going forward to plaintiff under the 90/180 category).

Nevertheless, a plaintiff alleging a serious injury under any of the alternative definitions in Section 5102(d), including the 90/180 category, must still show the injury was causally related to the accident.  Montgomery v. Pena, 19 A.D.3d 288, 289-90, 788 N.Y.S.2d 17, 17-18 (1st Dep't 2005).  District courts in this Circuit have held that a defendant can meet his initial burden on a motion for summary judgment by producing medical evidence that the claimed injuries were not caused by the accident, even if the evidence is based on an examination con- ducted long after the accident.  See Madden v. Lee, 01 Civ. 7856

(GWG), 2002 WL 31398951 at *2 (S.D.N.Y. Oct. 25, 2002) (defendant met initial summary judgment burden when defendant's physician examined plaintiff three years after the accident and concluded that plaintiff did not demonstrate any neurological disability causally related to the accident); see also Manqual v. Pleas, 02 Civ. 8311 (CBM), 2005 WL 2179083 at *3 (S.D.N.Y. Sept. 8, 2005) (defendant met initial summary judgment burden by submitting affidavit of independent neurologist who reviewed plaintiff's previous records, conducted examination four years after the accident and determined that plaintiff had "some form of cervical spondylosis . . . not related to the accident"); Zaviolav v. Morgan, 96 Civ. 5705 (JG), 2000 WL 133846 at *3 (E.D.N.Y. Jan. 13, 2000) (defendant met initial summary judgment burden with respect to the significant limitation and the 90/180 category alleged by plaintiff by offering an affidavit of one doctor who concluded from medical reports that there were no permanent residuals relating to the accident, and an affidavit of another doctor who concluded from a neurological examination that there was no evidence of "neurological sequela referable to the re-ported trauma . . . ").

Here, defendant submitted medical evidence from Dr. Bonomo who conducted an examination of plaintiff and reviewed plaintiff's history and medical records -- including the MRI reports taken a few weeks after the accident.  Because the

defendant has submitted his own physician's affidavit stating that the plaintiff no longer suffered from any injury, and that any injury sustained was not caused by a specific incidence of trauma, defendant has met his initial burden of showing the absence of a genuine issue of fact.

Since defendant has offered medical evidence that, if credited, establishes the accident did not cause any serious injury, plaintiff must now offer evidence sufficient to give rise to a genuine issue of fact. Bent v. Jackson, 15 A.D.3d 46, 47, 788 N.Y.S.2d 56, 57 (1st Dep't 2005), citing Gaddy v. Eyler, supra, 79 N.Y.2d at 957, 591 N.E.2d at 1177, 582 N.Y.S.2d at 991. To satisfy this burden, plaintiff must submit objective proof of an injury; subjective complaints alone are not enough. Arenes v. Mercedes Benz Credit Corp., 03 Civ. 5810 (NG)(MDG), 2006 WL 1517756 at *7 (E.D.N.Y. June 1, 2006); Decaze v. D & D Transportation, 01 Civ. 6543 (DLI)(JMA), 2005 WL 2436222 at *4 (E.D.N.Y. Sept. 30, 2005); Manqual v. Pleas, supra, 2005 WL 2179083 at *4; Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 1200, 746 N.Y.S.2d 865, 868 (2002). For the reasons set forth below, I find that plaintiff has failed to establish a genuine issue of fact that she has sustained a "serious injury."

As noted above, Section 5102(d) of the New York Insurance Law provides several alternative definitions of a "serious injury." In plaintiff's opposition papers to defendant's motion,

plaintiff claims she sustained "serious and permanent injuries" and that she was not able to work for approximately eight months after the accident (see Stern Aff., ¶¶ 3-4).  Reading plaintiff's opposition papers liberally, the definitions which appear to be relevant are:  (1) a "permanent consequential limitation of use of a body organ or member;" (2) a "significant limitation of a body function or system," and (3) "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute the usual and customary daily activities for not less than ninety days of 180 days immediately following the occurrence of the injury or impairment."

1. Plaintiff's Claim of "Serious Injury"

a. Permanent Consequential Limitation

Plaintiff claims she sustained "permanent injuries" as a result of the accident and offers Dr. Sam Mayerfield's affirmation that plaintiff sustained a "disc protrusion/herniation" to support her argument (Stern Aff., ¶ 6).  The affirmation is insufficient to establish a genuine issue of fact as to the existence of a permanent consequential limitation.  Dr. Mayerfield's affirmation addresses plaintiff's condition only as of January 2003 and contains no representations concerning the permanence of any consequential limitation.  Compare Uddin v.

Cooper, --A.D.2d--, 820 N.Y.S.2d 44, 45 (1st Dep't 2006) (evidence of herniated disk without evidence of permanent consequential limitation insufficient to create issue of fact concerning existence of serious injury), with Gonzalez v. Vasquez, 301 A.D.2d 438, 439, 754 N.Y.S.2d 7, 7-8 (1st Dep't 2003) (evidence of herniated disc and consequential permanent limitations is sufficient to create issue of fact concerning existence of serious injury).

Furthermore, the New York Court of Appeals has stated that "proof of a herniated disc, without additional objective medical evidence establishing that the accident resulted in significant physical limitations, is not alone sufficient to establish a serious injury."  Pommells v. Perez, 4 N.Y.3d 566, 574, 830 N.E.2d 278, 282, 797 N.Y.S.2d 380, 384 (N.Y. 2005); see also Meely v. 4 G's Truck Renting Co., 16 A.D.3d 26, 30, 789 N.Y.S.2d 277, 280 (2d Dep't 2005) (evidence of a herniated disc or disc bulge is not sufficient without objective evidence concerning physical limitations).

Plaintiff's medical records do not provide the objective evidence required.  They are based on past examinations and contain no opinion concerning the permanence of any claimed injury.  New York Courts have held that physicians' affidavits based solely on stale examinations that contain no opinion as to permanency are insufficient to give rise to a genuine issue of

fact concerning the permanency of the injury.  Covington v.
Cinnirella, 146 A.D.2d 565, 566, 536 N.Y.S.2d 514, 515 (2d Dep't
1989) (doctor's affidavit lacking a description of plaintiff's
current condition and based only on an examination that was
almost two years old was insufficient to defeat summary judg-
ment); Kauderer v. Penta, 261 A.D.2d 365, 366, 689 N.Y.S.2d 190,
191 (2d Dep't 1999) (affidavit based on examination performed
almost three years earlier was inadequate to defeat summary
judgment).

Because plaintiff has offered no objective evidence of
any permanent injury, she has not met her burden of offering
evidence sufficient to give rise to a genuine issue of fact as to
a permanent consequential limitation.

b.  Significant Limitation

Plaintiff does not expressly claim that she suffered a
"serious injury" on the basis of a "significant limitation of a
body function or system."  However, because it is an alternative
definition under Section 5102(d) that arguably applies to plain-
tiff's claim, I shall address its potential viability.

For an injury to qualify as a "significant limitation"
under Section 5102(d), the limitation must be something more than
a "minor, mild or slight limitation of use." Licari v. Elliot,
supra, 57 N.Y.2d at 236, 441 N.E.2d at 1091, 455 N.Y.S.2d at 573.

Furthermore, a plaintiff's subjective pain, if not supported by objective evidence, is not sufficient to establish a significant limitation.  Nasrallah v. Helio De, supra, 1998 WL 152568 at *5. Although setting forth a numeric percentage of a plaintiff's loss of motion is not an absolute requirement to establish a signifi- cant limitation, a qualitative assessment must have "an objective basis and compare[] the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system."  Toure v. Avis Rent A Car Sys., Inc., supra, 98 N.Y.2d at 350, 774 N.E.2d at 1200, 746 N.Y.S.2d at 868.

Plaintiff's medical records are not sufficient to show a significant limitation under Section 5102(d).  The observations made by Dr. Shah in his records -- which are neither authenti- cated nor sworn to by Dr. Shah -- contain vague statements and are not supported by specific, objective medical tests.  Although Dr. Shah states in his "assessment" that plaintiff suffered from a cervical disk herniation, he does not state whether he examined plaintiff's MRIs and does not state the basis for his conclusions (see Stern Aff., Ex. C); see Gaddy v. Eyler, 167 A.D.2d 67, 70, 570 N.Y.S.2d 853, 854 (3d Dep't 1991), aff'd, 591 N.E.2d 1176 (1992) (plaintiff's doctor's affidavit finding "chronic disk disease" was insufficient to find permanent injury or significant limitation."  See also Tuna v. Babendererde, --A.D.2d--, 819 N.Y.S.2d 613, 613 (3d Dep't 2006) (physician's affidavit inade-

quate where despite identifying specific limitations on plain-
tiff's range of motion, it did not describe diagnostic techniques
that were not dependent upon plaintiff's subjective complaints of
pain).

Dr. Paulson's records concerning plaintiff suffer from
similar deficiencies.  While Dr. Paulson's records regarding
plaintiff did indicate some objective medical tests were per-
formed, the results of these tests were normal (see Stern Aff.,
Ex. C).  On May 8, 2003, Dr. Paulson conducted a Fabere test[5] on
plaintiff that resulted in a positive finding (see Stern Aff.,
Ex. D3).  However, Dr. Paulson expressed no opinion concerning
the relationship, if any, between this positive finding and the
accident, or whether it was related to the "mild hip arthritis"
that Dr. Paulson suspected was present (see Stern Aff., Ex. C).

Plaintiff has also submitted copies of reports of her
physical therapy.  The physical therapists diagnosed plaintiff
with a lumbar and cervical sprain, which does not meet the
requirement for a significant limitation set forth in Licari that
the injury must be more than a "minor, mild or slight limitation
of use" to constitute a significant limitation.  Ventura v. U.S.,
121 F. Supp.2d 326, 334 (S.D.N.Y. 2000).  See also Fuller v.

---

[5]A Fabere test examines the patient's flexion, abduction,
external rotation and extension of the knees and hips to
determine in there is any indication of hip arthritis.  The
Sloan-Dorland Annotated Medical-Legal Dictionary, 718 (1987).

<u>Stevens</u>, 235 A.D.2d 863, 863, 653 N.Y.S.2d 162, 162 (3d Dep't 1997) (physician's affidavit stating plaintiff suffered from "acute cervical strain" was insufficient to show a serious injury because physician did not state that the injury substantially limited plaintiff in performing her daily activities).  Further-more, under New York law, physical therapy records are not probative evidence as a physical therapist "cannot render a diagnosis, form a prognosis, or determine permanency or duration of physical limitations." <u>Tornatoure v. Haggerty</u>, 307 A.D.2d 522, 522-23, 763 N.Y.S.2d 344, 345 (3d Dep't 2003).

Accordingly, I find that plaintiff has failed to offer evidence sufficient to give rise to a genuine issue of fact as to whether she sustained a "significant limitation" within the meaning of Section 5102(d).


c.   <u>90 Out of 180 Days</u>

Plaintiff argues that she also meets the statutory definition of "serious injury" on the theory that she was unable to perform substantially all of her usual and customary activi-ties for at least eight months after the accident (Stern Aff., ¶ 15).  The statute's phrase "substantially all" requires that the plaintiff's performance of her usual activities have been

curtailed to a great extent, not merely a slight curtailment. Licari v. Elliot, supra, 57 N.Y.2d at 236, 441 N.E.2d at 1091, 455 N.Y.S.2d at 573.

Plaintiff testified at her deposition that she never had any neck or back injuries before the accident (Rogers' Dep. at 166). Plaintiff, however, was neither asked nor did she offer testimony concerning whether any of her daily activities besides her employment were interrupted or hindered during the relevant ninety out of 180 days after the accident.

Instead, plaintiff argues that the Court need look only to the fact that plaintiff missed eight months of work to deny defendant's motion for summary judgment, citing to Manqual v. Pleas, supra, 2005 WL 2179083 at *7 (Stern Aff., ¶ 15). In Manqual, the Court determined that a plaintiff who did not miss any work following an accident was unable to meet the burden of proof under the 90/180 category because "courts typically con-sider a plaintiff's employment history in order to determine whether an injury has had a substantial impact on the plaintiff's daily routine . . . " Manqual v. Pleas, supra, 2005 WL 2179083 at *7.

While Manqual suggests that employment is an important factor in defining a person's "usual and customary daily activi-ties," other cases have held that a plaintiff's absence from

employment, without more, is insufficient to establish a serious
injury under the 90/180 category.  Uddin v. Cooper, supra, 820
N.Y.S.2d at 44 (despite the fact that plaintiff missed three
months of work during the first 180 days, plaintiff made no
allegations of any other daily activities substantially hin-
dered); see also Ferdinand v. Appanna, 8 Misc.3d 1004, 801
N.Y.S.2d 777, 2005 WL 1412934 at *2 (Sup. Ct. 2005) (four-month
absence from work without objective medical evidence is insuffi-
cient to raise a question of fact under the 90/180 category).

   Although plaintiff submits Dr. Paulson's note that
plaintiff was under her care and was unable to work, plaintiff
does not attempt to explain why the note -- which purported to
apply to the eight month period immediately after the accident --
was not prepared until approximately nine months after accident
(see Stern Aff., Ex. C).[6]  Moreover, there is nothing in Dr.
Paulson's records indicating that plaintiff's ability to partici-
pate in her normal activities was hindered as a result of the

---

[6]Plaintiff's submission of an affirmation from Dr. Herbert
Pecker, a physician who practiced with Dr. Paulson when she
treated plaintiff, properly authenticated Dr. Paulson's records
under the Federal Rules of Evidence (see Affirmation of Dr.
Howard Pecker, sworn to January 9, 2006, annexed as Ex. C to
(continued...)

(continued...)
Stern Aff.).  However, given that Dr. Pecker never examined
plaintiff, and his affirmation states only that he reviewed
plaintiff's medical records and could affirm that it was Dr.
Paulson's practice to make such records of patients, and recited
that plaintiff had three injections, and that Dr. Paulson
recommended that plaintiff go on disability, Dr. Pecker's
affirmation has low probative value as to the severity of
plaintiff's injuries.

injuries, or suggesting that she believed plaintiff should not
return to work for an extended period.  See Fuhrman-Peretz v.
Ferragamo, supra, 2006 WL 2587981 at *5 (plaintiff's own testi-
mony that she could not get out of bed for three to four months
and medical evaluations showing limitations in range of motion
but lacking any showing that plaintiff was unable to perform most
of her daily activities was insufficient to meet burden).

Dr. Mayerfield's affirmation, which states that the
MRIs revealed that plaintiff "sustained a disc protrusion
(herniation) at C5-C6 with impingement of the right C5-C6 with
impingement on the right C5 nerve root and a disc bulge at L4-L5"
is admissible evidence (see Mayerfield Aff., ¶ 4).  However, as
stated above, a diagnosis of a bulging or herniated disk, by
itself, does not constitute a serious injury; a plaintiff must
still put forward "objective medical evidence of the extent or
degree of the alleged physical limitations resulting from the
injuries and their duration."  Noble v. Ackerman, 252 A.D.2d 392,
394, 675 N.Y.S.2d 86, 89 (1st Dep't 1998).  Plaintiff has failed
to offer such evidence.

Thus, even in viewing the evidence in a light most
favorable to plaintiff, plaintiff has not submitted any objective
medical evidence that establishes (1) a causal relationship
between the accident and the injuries sustained and (2) a mate-
rial impairment that prevented plaintiff from performing substan-

tially all of her daily activities as a result of the accident.
See DiNunzio v. County of Suffolk, 256 A.D.2d 498, 499, 682
N.Y.S.2d 406, 407 (2d Dep't 1998); see also Beckett v. Conte, 176
A.D.2d 774, 775, 575 N.Y.S.2d 102, 103 (2d Dep't 1991).  Accord-
ingly, there is no triable issue of fact as to whether plaintiff
suffered a serious injury within the meaning of the 90/180
category.

#### d.   Summary

Consequently, plaintiff has failed to offer evidence
sufficient to raise a genuine issue of triable fact under any of
the potentially applicable definitions of a "serious injury" set
forth in Section 5102(d).

### VI.  Conclusion

Accordingly, for all the foregoing reasons, defendant's
motion for summary judgment is granted and the complaint is
dismissed.

Dated:  New York, New York
        September 22, 2006

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

25

Copies transmitted to:

Scott A. Stern, Esq.
Wingate, Russotti & Shapiro, LLP
420 Lexington Avenue
Suite 2705
New York, New York 10170

John Edward Hannum, Esq.
Hawkins, Feretic & Daly, LLC
11 Broadway
3rd Floor
New York, New York 10004